Filed 1/22/21  P. v. Pearce CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KENNETH LEE PEARCE, JR.,<br><br>    Defendant and Appellant. | G057650<br><br>(Super. Ct. No. 14WF3082)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles J. Sarosy, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Kenneth Lee Pearce, Jr., and his codefendants Desiree Rodriguez and Selena Siedlecki were convicted of multiple crimes for plotting and executing a violent attack against Mario Barriga. Appellant contends the trial court erred in denying his request for a separate trial, and there is insufficient evidence to support his conviction for torture. Finding these contentions unmeritorious, we affirm the judgment.[1]

FACTS

In 2014, Barriga was working as a mobile tattoo artist in Orange County. Having known Siedlecki for several years, and being acquainted with Rodriguez through his good friend Mikey Carter, Barriga thought he was on good terms with them. But by the summer of 2014, Siedlecki and Rodriguez had begun to suspect Barriga and Carter had stolen some of their personal property. So, they enlisted appellant and came up with a plan to get their belongings back.

The plan was launched on August 7, 2014. That day, Siedlecki invited Barriga over to her Costa Mesa residence for the ostensible purpose of giving her a tattoo. However, soon after Barriga arrived, Rodriguez and appellant entered the home and confronted him. Rodriguez accused Barriga of stealing a television and other items from her. She also wanted to know where Carter was. Barriga said he didn't know anything about Rodriguez's stolen property or Carter's whereabouts, but Rodriguez did not believe him. She and appellant hogtied Barriga on the floor with duct tape. Then they put tape over his mouth and nose, making it hard for him to breathe. Barriga struggled to get free, but appellant hit him in the back of the head with a metal pipe, causing him to black out momentarily.

When Barriga came to, Rodriguez and appellant removed his belt, and appellant wrapped it around his neck like a noose. Then, while appellant was holding the long end of the belt, Rodriguez again asked Barriga where Carter was, as well as other

_____

[1] We previously affirmed the judgment as to Rodriguez in her separate appeal. (See *People v. Rodriguez* (May 18, 2020, G057383) [nonpub. opn.].) Siedlecki did not appeal her convictions.

2

questions to which he did not know the answer. Barriga's failure to answer the questions led to further abuse. In fact, every time he did not answer a question satisfactorily, appellant tightened the belt around his neck and punched him in the head. Rodriguez joined in by kicking Barriga with her boots. She also threatened to inject Barriga with bleach and told him they were going to take him to Apple Valley and bury him there in a shallow grave.

At one point, Barriga wiggled free of his restraints and ran into the garage. However, appellant caught up to him there and struck him with the pipe. Then he dragged Barriga back into the kitchen and pummeled him some more with the pipe before Barriga escaped again. This time, Barriga ran into the bathroom and tried to lock the door, but appellant broke through the door and hit him repeatedly. When it appeared Barriga was going to lose consciousness, appellant doused him with cold water in the shower to keep him awake. Then he had Barriga take off his wet clothing and gave him some dry clothes to wear.

After that, appellant and Rodriguez took Barriga out to the garage and put him in the backseat of Siedlecki's car. Appellant got in the backseat next to him, and Rodriguez took the wheel and drove them to her apartment complex in Newport Beach. Upon entering the parking structure, she noticed a police officer in the area and warned Barriga not to try to escape. However, when she stopped the car, Barriga opened his door and took off. Appellant gave chase momentarily but turned back when the pipe fell out of his pocket.

Barriga flagged down the police officer and told him of his ordeal. He was then taken to the hospital and treated for multiple wounds to his head, neck, arms and torso. Among other things, Barriga needed staples to mend the numerous lacerations on his head and stitches to heal a gash on his left arm. He never did get his belt or clothes back, nor did the police ever find the backpack that he brought with him over to Siedlecki's house. But they did find heroin and methamphetamine in the house. The

3

defense theorized those drugs belonged to Barriga and that in order to avoid prosecution for possessing them, he greatly exaggerated what appellant and Rodriguez did to him. In attacking Barriga's credibility, the defense also pointed out he was a convicted drug offender and was granted immunity in an unrelated case in exchange for his testimony against defendants.

In the end, however, the jury convicted appellant of conspiracy to commit assault by means of force likely to cause great bodily injury, assault with a deadly weapon, and torture. It also found him guilty of kidnapping, as a lesser included offense of kidnapping for robbery, and robbery, as a lesser included offense of robbery in concert. And it found true allegations he personally inflicted great bodily injury on Barriga. After finding appellant had served two prior prison terms, the trial court sentenced him to seven years to life in prison, plus a consecutive term of seven years and four months.

DISCUSSION

*Severance Motion*

Appellant contends the trial court erred in denying his motion for a separate trial. We disagree.

In cases involving multiple defendants who are charged with the same crimes, a joint trial is generally preferred. (*People v. Lewis* (2008) 43 Cal.4th 415, 452.) However, "severance may be called for when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.' [Citations.]" (*Ibid.*) On appeal, "[w]e review a trial court's denial of severance for abuse of discretion [citations], based on 'the facts known to the court at the time of the ruling' [citation]." (*People v. Thompson* (2016) 1 Cal.5th 1043, 1079.) "[E]ven if a trial court acted within its discretion in denying severance," we "'"may nevertheless reverse a conviction where,

4

because of the consolidation, a gross unfairness has occurred such as to deprive the defendant of a fair trial or due process of law.'" [Citation.]" (*Ibid.*)

Appellant's severance motion was tied to the trial court's decision to allow the prosecution to admit certain Facebook messages that Rodriguez sent in the days leading up to the attack on Barriga. During that period, Rodriguez sent her friends multiple messages in which she accused Barriga and Carter of stealing from her.[2] Four days before the attack, Rodriguez messaged Carter and said she wanted him to return her property to her. When that did not happen, Rodriguez sent Carter a message two days later saying his time was up, and now he was going "feel" her wrath. Around this time, Rodriguez also messaged appellant and told him she needed him because Carter had "robbed" her house and "stolen everything" from her. Appellant offered his assistance to Rodriguez by asking her, "What can I do to help[?]"

The trial court believed appellant and Rodriguez's statements were admissible to show their motive for the alleged offenses, but appellant disagreed for two reasons. First, he felt his statements to Rodriguez were not indicative of any particular motive, an argument the court ultimately rejected and appellant does not renew here. Second, and more pertinent to this appeal, appellant feared that if Rodriguez's statements were admitted at trial, the jury would be inclined to use them not just against Rodriguez, but against him as well. Appellant argued the possibility of a prejudicial spill-over effect from Rodriguez's statements was so great that a separate trial was the only way to ensure he received a fair trial. However, the trial court did not see it that way. In denying appellant's severance request, the court determined his fair trial rights could be protected by instructing the jury the particular statements in the defendants' Facebook messages could only be used against the defendant who actually wrote them.

---

[2] Siedlecki sent similar messages to her friends on Facebook, but appellant's argument centers on the messages sent by Rodriguez.

5

With that in mind, at the end of the trial, the court instructed the jury the statements in the defendants' Facebook messages could only be considered for a limited purpose: They could only be used against the person who made them. Thus, with regard to Rodriguez's statements, the jury could only consider them as to her, and not the other two defendants. To ensure the jury abided by this admonishment, the court attached a written instruction to the exhibit containing Rodriguez's Facebook messages. The instruction reminded the jury that when it was considering Rodriguez's statements during deliberations, it could only use them against Rodriguez. In his closing argument, the prosecutor also alluded to the limited admissibility of Rodriguez's statements, saying they could only be used for the purpose of showing Rodriguez's state of mind.

Despite all these caveats regarding the permissible use of Rodriguez's Facebook statements, appellant insists the court's instructions were insufficient to guard against the possibility of the jury using them against him. This claim runs counter to the well-established rule that jurors are presumed to understand and follow the instructions they are given. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) In fact, that presumption has been described as "'[t]he crucial assumption underlying our constitutional system of trial by jury.'" (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Granted, there may be situations where it is practically impossible for jurors to follow a limiting instruction that calls on them to consider evidence as to one defendant but not another. For example, when one defendant makes a pretrial statement that facially incriminates another defendant, "the risk that the jury will not, or cannot, follow [a limiting] instruction[] is so great, and the consequences of [that] failure so vital to the defendant," that separate trials may be required. (*Bruton v. United States* (1968) 391 U.S. 123, 135; accord *People v. Aranda* (1965) 63 Cal.2d 518.)

In this case, however, the Facebook messages Rodriguez sent to her friends and Carter in the days leading up to the attack on Barriga did not even mention, let alone incriminate, appellant. They simply revealed that Rodriguez was angry with Barriga and

6

Carter because she believed they had stolen some of her belongings. Rodriguez also expressed frustration with Carter for the same reason during her Facebook exchange with appellant. During that exchange, appellant offered to help Rodriguez get her belongings back. And it was obvious from appellant's conduct during the attack that is what he was there to do. Given appellant's own words and actions, the jury did not have to look to Rodriguez's statements to find out what he was thinking. Therefore, it is unlikely the jury would have ignored the trial court's repeated instructions pertaining to the limited use of Rodriguez's statements. Under the circumstances presented, those instructions were sufficient to safeguard appellant's due process rights, and the trial court did not abuse its discretion in denying appellant's request for a separate trial.

*Sufficiency of the Evidence*

Appellant also contends there is insufficient evidence to support his conviction for torture. The record shows otherwise.

In reviewing the sufficiency of the evidence to support a criminal conviction, we must ascertain whether there is substantial evidence to support the jury's verdict. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) This requires us to review the facts "in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. [Citation.] The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. [Citation.]" (*People v. Misa* (2006) 140 Cal.App.4th 837, 842.)

The crime of torture occurs when a person inflicts great bodily injury on another to cause cruel or extreme pain and suffering for a particular purpose, i.e., "revenge, extortion, persuasion, or for any sadistic purpose[.]" (Pen. Code, § 206.) While appellant does not dispute he inflicted great bodily injury on Barriga to cause extreme pain and suffering, he contends there is insufficient evidence he did so for one of

7

those quoted reasons. However, the reason he joined Rodriguez in confronting Barriga was to help her get her belongings back. Their objective was to convince Barriga to either give up the goods, or tell them where Carter was, so they could get them back from him. In order to accomplish this goal, appellant choked Barriga with a belt, used his head as a punching bag, and repeatedly hit him on the head with a metal pipe. Although those methods did not succeed in getting Barriga to cooperate, the jury could reasonably infer appellant implemented them for the purpose of persuasion, a motive that is expressly included in the torture statute.

In addition, the record shows appellant brutalized Barriga with his fists and the pipe every time he attempted to escape during the attack in Siedlecki's house. This indicates appellant was acting out of vengeance for Barriga's perceived insubordination. Because the record contains substantial evidence appellant inflicted severe pain and suffering on Barriga for purposes of persuasion and/or revenge, we reject his challenge to the torture count.

DISPOSITION

The judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.

8